UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JESSE FOX, LORENZO DOMINGUEZ, and
MICHAEL SKILLINGS, and on
Behalf of all others similarly situated,

      Plaintiffs,

v.                        CASE NO. :

RAINBOW ROADSIDE SERVICES, LLC, a
Limited Liability Company, KIMBERLY J. GREEN,
An Individual, and MARY ELIZABEITH LOFLIN,
An individual, and CHRISTOPHER MARTIN, an
Individual,

      Defendants.
_____/

## **CLASS ACTION COMPLAINT AND DEMAND FOR JURY TRIAL**

      Plaintiffs, Jesse Fox, Lorenzo Dominguez, and Michael Skillings, (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through undersigned counsel, file this Class Action Complaint against Defendants, Rainbow Roadside Services LLC, a corporation, Kimberly J. Green, an individual, Mary Elizabeth Loflin, an individual, and Christopher Martin, an individual, (collectively, "Defendants"), and in support of thereof states as follows:

## **NATURE OF THE LAWSUIT**

      1.    This is a class action complaint for overtime and minimum wage damages under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., for violations of the Florida Constitution, Article X, Section 24, the Florida Minimum

Wage Act ("FMWA"), Fla. Stat. § 448.110, the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201 et seq., and for conversion under Florida common law.

2.      This Complaint is filed both as a collective action under 29 U.S.C. § 216(b) and as a class action under the Federal Rule of Civil Procedure 23. The instant action is brought by and on behalf of persons who are or have been employed as Roadside Technicians in the State of Florida, purportedly as independent contractors though in reality treated as employees, during the relevant statutory period by Defendant.

3.      This Complaint challenges Defendant's uniform policy of willfully misclassifying its Florida Roadside Technicians as independent contractors, when they are, under the economic reality test, employees of Defendant.

4.      By unlawfully misclassifying its Florida Roadside Technicians as independent contractors, Defendants create a scheme in which it faces the public and effectively acts as a singular enterprise comprised of its Florida Roadside Technician employees, yet passes its ordinary costs of doing business on to those employees it unlawfully categorizes as independent contractors in order to gain an unfair method of competition and trade through unconscionable acts or practices by:

> (a) Failing to pay its Florida Delivery Drivers the minimum wage and overtime premium required by Federal law as compensation for every hour that they worked;

2

(b) Creating negative tax implications for its Florida Roadside Technicians, depriving them of their right to seek benefits under the Florida Worker's compensation program and the Florida Reemployment Assistance program, and effectively reducing their long-term contributions to the federal Medicare and Social Security programs;

(c) Being unjustly enriched not only by the unpaid labor of the Florida Roadside Technicians but also as to Defendant's diversion of losses and the costs of doing business onto those Florida Roadside Technicians it unlawfully categorizes as independent contractors.

5.     Plaintiffs bring this collective action to recover the unpaid wages owed to them and all other similarly situated employees, current and former, of Defendants who worked in Florida, at any time during the three year period before this Complaint was filed up to the present ("FLSA Class Members").  These Class Members should be informed of the pendency of this action and apprised of their rights to join in the manner envisioned by *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989) and its progeny.

6.     Plaintiffs complain on behalf of themselves, and a class of other similarly situated current and former employees of the Defendant, pursuant to Fed.R.Civ.P.23, alleging the Florida Roadside Technicians are entitled to back wages from Defendant for hours/weeks of work for which they did not receive at

least the Florida minimum wage, in violation of Article X, Section 24 of the Florida Constitution ("FMWA Class Members").

7.    Plaintiffs also complain on behalf of themselves, and a class of other similarly situated current and former employees of the Defendants, pursuant to Fed.R.Civ.P.23, alleging the Florida Roadside Technicians have suffered injuries in fact in that Defendants have obtained valuable property, money and/or services from them ("FDUTPA Class Members") and have deprived them of valuable rights and benefits guaranteed to them by law.

## JURISDICTION AND VENUE

8.    This Court has subject matter jurisdiction of this action under 28 U.S.C. § 1331 and 29 U.S.C. § 201 et seq. Exercise of supplemental jurisdiction over Plaintiff's state law claims is appropriate under 28 U.S.C. § 1367(c).

9.    This Court has the authority to grant declaratory relief pursuant to the FLSA and the Federal Declaratory Judgment Act ("DJA"), 28 U.S.C. §§ 2201-02.

10.    This Court has jurisdiction over the Florida Minimum Wage Claims pursuant to 28 U.S.C. §1367, because the acts and omissions that give rise to Plaintiff' FLSA claims are the same acts and omissions that give rise to Plaintiff's Florida Minimum Wage Claims.

11.    At all times material hereto, Defendant Rainbow Roadside Services LLC, ("Defendant Rainbow Services"), was subject to personal jurisdiction in the State of Florida under the Florida Long Arm Jurisdiction Act, Fla. Stat. § 48.193. Defendant Rainbow Roadside is subject to personal jurisdiction in Florida, because

it caused injury in the State of Florida through its acts and omissions outside of the State of Florida.

12.     Furthermore, this Court's exercise of personal jurisdiction over Defendant Rainbow Services is constitutionally sound. Through its operations across Florida, in Flagler, Brevard, and Pinellas Counties, Defendant has established sufficient minimum contacts with the State of Florida to make it reasonably foreseeable that Defendant could be sued in Florida. Defendant will suffer no unfair prejudice from the exercise of this Court's personal jurisdiction, which serves the interests of justice in this case.

13.     Venue is proper in the Middle District of Florida, because all of the events giving rise to these claims occurred in Flagler, Brevard, and Pinellas Counties, Florida.

14.     Plaintiffs have satisfied all conditions precedent, or they have been waived.

15.     Plaintiffs have hired the undersigned attorneys and agreed to pay them a fee.

16.     Plaintiffs request a jury trial for all issues so triable.

## **PARTIES**

17.     Defendant Rainbow Roadside Services, LLC, ("Defendant Rainbow Services") operates a "light-duty" roadside assistance company operating in Brevard and Pinellas Counties.

18.     Defendant Rainbow Roadside Services, LLC, is a foreign corporation with headquarters in Currituck, North Carolina.

19.     Defendant Kimberly J. Green, ("Defendant Green"), is managing member of Defendant Rainbow Services.

20.     Defendant Mary Elizabeth Loflin, ("Defendant Loflin"), is a managing member of Defendant Rainbow Services.

21.     Defendant Christopher Martin ("Defendant Martin"), is a manager of Rainbow Services and specifically manages the payroll for Defendant Rainbow Services.

22.     Through the exercise of dominion and control over all employee-related matters at Defendant Rainbow Services in their individual capacities, Defendants Green, Loflin, and Martin are also "employers" within the meaning of the FLSA.

23.     As part of their duties, Defendants Green, Loflin, and Martin supervised Plaintiffs, and exercised control over the wages, hours, and working conditions of Plaintiffs.  Defendants Green, Loflin, and Martin, also controlled the payroll practices of Defendant Rainbow Services.

24.     The Class Members of the two classes Plaintiffs seek to represent are all of Defendants' current and former Roadside Technicians ("Florida Roadside Technicians" or "Roadside Technicians") who worked for Defendants in Florida at any time during the applicable limitations period prior to the filing of this Complaint up to the present.

25.     Plaintiff Jesse Fox, ("Plaintiff Fox"), has worked as a Roadside Technician for Defendants since January 2021, in Brevard County, Florida, and surrounding areas.

26.     Lorenzo Dominguez, ("Plaintiff Dominguez") worked as a Roadside Technician for Defendants from March to May, 2022, in Orange County, Florida, and surrounding areas.

27.     Michael Skillings, ("Plaintiff Skillings") worked as a Roadside Technician for Defendants from November 2020 to February 2022 in Pinellas County, Florida, and surrounding areas.

## MISCLASSIFICATION AS INDEPENDENT CONTRACTORS

28.     Defendants purportedly contract with independent contractors in Florida to act as its Roadside Technicians in order to provide roadside assistance to drivers on the highways and roadways of Florida for such things as tire changes, jump starting batteries, fluid delivery, and lock-outs, for instance.

29.     However, Defendants exercise employee-level of control over its Roadside Technicians' actions and responsibilities, all the while improperly classifying them as independent contractors in order to divert its own costs of doing business on to them.

30.     Defendants draft, and require the Roadside Technicians to sign, its uniform independent contractor agreement unchanged and with the rates of service established solely by Defendants.

7

31.     Defendants' uniform independent contractor agreement requires the Roadside Technicians to exclusively perform light-duty roadside assistance services for Defendants. In fact, failure to accept calls from Defendants' dispatch results in Defendants withholding monies from Plaintiffs.

32.     Defendants' uniform independent contractor agreement requires Roadside Technicians to permit Defendants to sell to them, and then deduct from their pay, the cost of tools, such as lock-out tools, as well as training to perform the job.

33.     Defendants require Plaintiffs to work scheduled shifts during which time the Plaintiffs are unable to perform work for any other employer. In fact, failure to respond to service calls from Defendants results in monetary deductions from Defendants.

34.     Defendants require the Roadside Technicians to purchase uniforms from Defendants and then requires the uniforms to be worn by Plaintiffs during their entire shift.

35.     Defendants require the Roadside Technicians to attend mandatory meetings on Wednesday mornings. Defendants utilize the mandatory meetings to instruct the Roadside Technicians and their alleged employees on how to perform their job.

36.     Defendants require the Roadside Technicians to wait for Defendants' service calls thus preventing Plaintiffs to accept work from any other employer. Thus, Defendants engage Plaintiffs to wait.

37.     Defendants require the Roadside Technicians to accept the service calls it provides to them, including the timeframes for the services to be provided.

38.     The Roadside Technicians do not have control over the order of the service calls, the timeframes for the service calls, or the number of service calls to make each day.

39.     The Roadside Technicians do not negotiate with the drivers who need assistance or the insurance companies providing the roadside assistance, as to the rate charged for the service call, as it is dictated by Defendants.

40.     Defendants require the Roadside Technicians to call Defendants at every service call and provide pictures and details of the work to be performed while waiting on approvals from Defendants for the scope of roadside assistance.

41.     Defendants require the Roadside Technicians to stay at a service call until Defendants' dispatch is contacted and approves the departure.

42.     Defendants require the Roadside Technicians to respond at all hours to its needs for service calls as it dictates, including on pre-scheduled days off.

43.     Defendants created and requires all of the Roadside Technicians to go through its background screening process.

44.     Defendants effectively prohibit their Roadside Technicians from accepting any work from any other entity and thus control their profit and loss by requiring exclusivity in its contracts at its whim.

## FLSA COVERAGE

45.    In an FLSA case, the following elements must be met. "(1) [Plaintiff] is employed by the defendant, (2) the defendant engaged in interstate commerce, and (3) the defendant failed to pay [Plaintiff] minimum or overtime wages." *Freeman v. Key Largo Volunteer Fire & Rescue Dept., Inc.,* 494 Fed. Appx. 940, 942 (11th Cir. 2012) *cert. denied,* 134 S. Ct. 62, (U.S. 2013).

46.    At all times material hereto, Plaintiffs were "engaged in the production of goods" for commerce within the meaning of Section 6 and 7 of the FLSA, and were thus subject to the individual coverage of the FLSA.

47.    As part of their regular job duties for Defendants, Plaintiffs routinely and regularly used and/or handled items moving in the stream of commerce.  For example, Plaintiffs utilized lock-out tools in Florida supplied by Defendants in North Carolina, tires produced outside of Florida, and transactions for services through credit cards and nation-wide insurance companies, all across state lines.

48.    At all times material hereto, Plaintiffs were "employees" of Defendant within the meaning of the FLSA.

49.    At all times material hereto, Defendants were "employers" within the meaning of the FLSA.

50.    Defendants continue to be "employers" within the meaning of the FLSA.

51.     At all times material hereto, Defendants were, and continue to be, an enterprise engaged in the "providing services for commerce" within the meaning of the FLSA.

52.     At all times material hereto, the annual gross sales volume of Defendants exceeded $500,000 per year. Thus, Defendants were an enterprise covered by the FLSA under 29 U.S.C. §§ 203(r) and 203(s).

53.     At all times material hereto, the work performed by Plaintiffs was integral and essential to the business performed by Defendants.

## FDUTPA VIOLATIONS

54.     Plaintiff and the FDUTPA Class Members are "consumers" and are protected by FDUTPA.

55.     Defendant Rainbow Services misclassifies its Roadside Technicians such as Plaintiffs and the putative FDUTPA Class Members, so that it can pass the cost of doing business on to them.

56.     Defendant Rainbow Services requires the Roadside Technicians to sign unconscionable independent contractor agreements that require, for instance, the Roadside Technician to:

       a. allow Defendant Rainbow Services to "sell" to Plaintiffs and the Roadside Technicians anything Defendant Rainbow Services believes they might need including tools and training to perform their job and to off-set payments to Plaintiffs for selling those items to Plaintiffs;

    b. withhold monies from Plaintiffs' paychecks without providing justification or a means to challenge the withholding;

    c. indemnify Defendant Rainbow Services for loss or damage during a service call even though Plaintiffs are required to respond to all service calls as dictated by Defendant Rainbow Services; and

    d. agree to refrain from all collection efforts for nonpayment from Defendant Rainbow Services' insurance clients such that Rainbow Services completely controls Plaintiffs profits and losses.

57. As an employer, Defendant Rainbow Services had a legal obligation under the Internal Revenue Code and Florida law to deduct all applicable employment taxes from its Roadside Technicians' earnings.

58. The unlawful misclassification of Plaintiff and the putative class members as independent contractors causes harm by creating negative tax implications, deprives them of the right to seek benefits through the Florida Worker's Compensation program and Florida's Reemployment Assistance program, and effectively reduces their long-term contributions to federal Medicare and Social Security programs, when they are entitled to all of these benefits as a matter of law by virtue of their status as employees.

59. By misclassifying Plaintiffs and the putative FDUTPA class members as independent contractors, Defendant Rainbow Services avoided withholding employment taxes from their earnings. Defendant Rainbow Services also avoided paying mandatory employment taxes on their behalf, as it was legally required to

do for all of its employees under the provisions of the Internal Revenue Code. <u>See</u> 26 U.S.C. §§ 3102(a), 3402(a) (imposing a duty on employers to deduct applicable taxes from their employees' wages); 26 U.S.C. § 3401(d)(1) (defining "employer" under the IRC); (26 U.S.C. § 3121(a) (defining employee wages for the purpose of income taxation).

60.    Defendant Rainbow Service's purpose in misclassifying Plaintiffs and the putative FDUTPA class as independent contractors, rather than properly classifying them as employees, is to save money and simultaneously acquire a competitive advantage in the marketplace. Specifically, by avoiding payment of all applicable employment taxes that it had a legal duty to pay on behalf of its Roadside Technicians by virtue of their status as employees, Defendant saved the money that it would otherwise have spent in meeting its tax obligations in connection with their employment. Moreover, this intentional misclassification of employees as independent contractors helped Defendant Rainbow Services acquire a competitive advantage in the marketplace.

61.    In purposely avoiding payment of the mandatory employment taxes that it was legally obligated to pay on behalf of its Roadside Technicians in order to save money for its business, Defendant simultaneously ensured that its labor costs remained consistently lower than those of other employers in Florida, by failing to pay the prevailing minimum wage and any applicable overtime, all the while depriving Plaintiffs and the putative FDUTPA Class Members of benefits to which, as employees, they were entitled by law.

62. Thus, by intentionally misclassifying Plaintiffs and the putative FDUTPA class members, Defendant Rainbow Services engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in conduct of any trade or commerce, thereby violating the FDUTPA.

## FACTS SPECIFIC TO PLAINTIFFS

63. Plaintiffs worked for Defendant Rainbow Services as Roadside Technicians.

64. Plaintiffs' job-duties were to perform light vehicle maintenance to insured drivers in the State of Florida on behalf of Defendants' insurance clients.

65. Defendants exercised employee-level of control over Plaintiffs' procedures, actions and responsibilities, all the while improperly classifying them as an independent contractors.

66. Defendants required Plaintiffs to work specified hours during a day, referring to those set hours as "shifts" during which time Plaintiffs were unable to accept work for any other employer.

67. Defendants required Plaintiffs to accept all dispatch calls made to them and to respond to those calls within a pre-established timeframe determined solely by Defendants. For example, Defendants required Plaintiffs to be in route to a service call within two to three minutes of the dispatch from Defendants.

68. Plaintiffs are not permitted to decline dispatch calls from Defendants.

69. Defendants require Plaintiffs to track the services they perform for Defendants on Defendants' pre-established call logs.

14

70.     Defendants then determined which calls Plaintiffs would be paid for, often relying solely on whether or not Defendants received payment from its insurance company clients.

71.     Defendants did not pay Plaintiffs for all service calls.

72.     Defendant utilized "Towbook" for many of its dispatch calls and required Plaintiffs to utilize the application to receive their dispatch instructions.

73.     Defendants often denied payment to Plaintiffs after the service was performed and completed by Plaintiffs.

74.     Defendants required Plaintiffs to wear Defendants' uniforms and to purchase those uniforms from Defendants.

75.     Defendants required Plaintiffs to take pictures, talk to customers, and call in specific ways to hold themselves out as employees of Defendants.

76.     Defendants required Plaintiffs to attend meetings on the first Wednesdays of every month.

77.     Defendants dictated shifts to Plaintiffs and the Roadside Technicians were unable to take time off from work without retaliation, such as termination.

78.     Defendants withhold pay from Plaintiffs if Plaintiffs earn above a certain rate.

79.     Defendants required Plaintiffs and the Roadside Technicians to wait for dispatches such that Defendant engaged Plaintiff to wait.

80.     Defendants terminated employees that challenged their alleged independent contractor status.

15

81.    Defendants effectively prohibit Plaintiffs from accepting any work from any other entity and thus controlled Plaintiffs' profit and loss by requiring exclusivity of Plaintiffs' services for all of Defendants' insurance company clients.

82.    Thus, Plaintiffs are "non-exempt employees" who are covered by the FLSA.

83.    At all times material hereto, Plaintiffs worked hours at the direction of Defendants, and Plaintiffs were not paid at least the applicable FLSA minimum wage for all of the hours that they worked.

84.    At all times material hereto, Plaintiffs worked hours at the direction of Defendants, and Plaintiffs were not paid at least the applicable State of Florida minimum wage for all of the hours that they worked, in accordance with the Florida State Constitution and the FMWA.

85.    By paying Plaintiffs only for some of the services performed and, additionally, deducting from Plaintiffs' pay for improper reasons, Defendants failed to pay Plaintiffs a minimum wage.

86.    Defendants deducted from Plaintiffs' pay without justification or a mechanism to challenge such deductions.

87.    Due to Defendants' improper pay practices, Plaintiffs often earned less than the State of Florida minimum wage for the hours they worked.

88.    Defendants failed to track the Plaintiffs' hours of work and Plaintiffs regularly worked forty to seventy hours per week, including the time they spent

meetings, waiting for service calls, travelling to service calls, and performing services for which they received no compensation at all.

89.     Due to Defendants' improper pay practices, Plaintiffs often worked more than forty hours per week and were not compensated the premium rate required by the FLSA for every hour over forty that they worked.

90.     Defendants' actions were willful, and showed reckless disregard for the provisions of the FLSA.

## 216(b) COLLECTIVE ACTION ALLEGATIONS

91.     Plaintiffs assert their claim under the FLSA, pursuant to 29 U.S.C. § 216(b), on behalf of themselves and on behalf of all other similarly situated employees currently and formerly employed by Defendants.

92.     Pending any modifications necessitated by discovery, the named Plaintiffs preliminarily define the classes as follows:

**FLSA 216(b) Overtime Class:**

**All current and former Roadside Technicians of Defendant in the State of Florida, whether or not categorized as employees, trainees, or independent contractors, who were not compensated the premium rate for each hour over forty that they worked in each week worked.**

**FLSA 216(b) Minimum Wage Class:**

**All current and former Roadside Technicians of Defendant in the State of Florida, whether or not categorized as employees, trainees, or independent contractors, who were not compensated at least the statutory minimum wage in each week worked.**

93.     All potential 216(b) Class members are similarly situated because, among other things, they are or were all *de facto* employees of Defendants and, upon information and belief, all suffered from the same policies of Defendants, including:

a.      Being paid by the service call, for which compensation was received from Defendants' insurance company clients, without regard to the number of hours worked by Plaintiffs;

b.      Being improperly classified as "independent contractors"

c.      Failure to be paid at least statutory minimum wage for each hour of work as mandated by the FLSA;

d.      Failure to be paid the premium rate for each hour over forty hours that they worked in each week worked as mandated by the FLSA.

## CLASS ACTION ALLEGATIONS

94.     Plaintiffs also sues on their own behalf and on behalf of a class of persons under Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

95.     Plaintiffs bring their Florida Minimum Wage Claim on behalf of all persons who were employed by Defendant at any time since July 2017, to the entry of judgment in this case (the "Class Period"), who were "Roadside Technicians" and who have not been paid at least the applicable Florida Minimum Wage for

hours/weeks worked, as required, in violation of Article X, Section 24 of the Florida Constitution (the "Class Members").

96.     The persons in the Class identified above are so numerous that joinder of all members is impracticable.  Although the precise number of such persons is unknown, and the facts on which the calculation of that number are presently within the sole control of the Defendants, upon information and belief, there are likely between 15 and 50 members of the Class during the Class Period.

97.     The claims of Plaintiffs are typical of the claims of the Class, and a class action is superior to other available methods of fair and efficient adjudication of the controversy - particularly in the context of wage and hour litigation where individual plaintiffs lack the financial resources to vigorously prosecute a lawsuit in federal court against corporate Defendants.

98.     The Defendant Rainbow Services acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

99.     Specifically, Defendant Rainbow Services failed to pay its Roadside Technicians the Florida minimum wage as mandated by Article X, Section 24 of the Florida Constitution.

100.     Application of this policy or practice does/did not depend on the personal circumstances of Plaintiffs or those joining this lawsuit.  Rather, the same policy or practice which resulted in the non-payment of minimum wages to

Plaintiffs applied and continues to apply to all class members.  Accordingly, the class members are properly defined as:

**Florida Minimum Wage Class:**

**All of Defendants' current and former Roadside Technicians who worked in the State of Florida at any time during the five (5) years before this Complaint was filed, up to the present, not paid Florida's minimum wage for all hours worked.**

101.   Plaintiffs are committed to pursuing this action and have retained competent counsel experienced in employment law and class action litigation.

102.   Plaintiffs have the same interests in this matter as all other members of the class and Plaintiffs' claims are typical of the Class.

103.   There are questions of law and fact common to the Class which predominate over any questions solely affecting the individual members of the Class, including but not limited to:

a.   whether the Defendants employed the members of the Class within the meaning of Article X, Section 24 of the Florida Constitution;

b.   whether the Defendants failed to keep true and accurate time records for all  hours worked by Plaintiffs and members of the Class;

c.   what proof of hours worked is sufficient where employers fail in their duty to maintain time records;

20

d. whether Defendants failed and/or refused to pay the members of the Class at least the Florida Minimum Wage in one of more workweeks;

e. whether the Defendants are liable for all damages claimed hereunder, including but not limited to, costs, disbursements and attorney's fees; and, finally,

f. whether the Defendants should be enjoined from such violations of Article X, Section 24 of the Florida Constitution in the future.

## FDUTPA RULE 23 CLASS ACTION ALLEGATIONS

104.    Plaintiff asserts Rule 23 class claims on behalf of the Putative Class defined as follows:

**FDUTPA CLASS:**

**All persons employed by Defendants as Roadside Technicians in Florida from the four years preceding the filing of this Complaint through the date of final judgment in this action**.

105.    Plaintiffs and all similarly situated Roadside Technicians of Defendants are members of the Putative FDUTPA Class described herein.

106.    The number of persons belonging to the Putative Rule 23 Class herein is so numerous that joinder of all such persons would be impracticable. While the exact number and identities of all such persons are unknown at this time and will only be obtainable through appropriate discovery, Plaintiffs are informed and

reasonably believe, and on this basis allege, that the Putative Rule 23 Class described herein includes between 15 and 50 persons.

107.   Disposition of the FDUTPA claims of Plaintiffs and all similarly situated Roadside Technicians in a class action will benefit all parties and this Court.

108.   A well-defined community of interest is presented by the Putative Rule 23 Class herein, because each member of the Putative Rule 23 Class has an interest in being classified as an employee rather than an independent contractor, obtaining appropriate legal relief for the harm alleged in this Complaint, and obtaining adequate compensation for the common damages which Plaintiffs and all other persons similarly situated have suffered as a result of Defendants' actions.

109.   Each member of the putative class described herein has performed labor for Defendants at Defendants' request at some time during the Class Period, while the members of the putative class were unlawfully misclassified as independent contractors.

110.   In the instant case, a class action is superior to any other available method in order to promote and achieve the fair and efficient adjudication of the claims presented herein.

111.   The prosecution of separate actions by individual members of the Putative Rule 23 Class described herein would create a risk of inconsistent and/or varying adjudications with respect to individual members of the putative class, resulting in the establishment of incompatible standards of conduct for Defendant,

and creating the risk that separate adjudication of individual Class members' claims would, as a practical matter, either dispose of the interests of other Class members who had no opportunity to join those separate suits, or substantially impede or impair the ability of these other Class members to protect and vindicate their own interests.

112.    Common questions of law and fact exist in this case with respect to the Putative Rule 23 Class, and these common questions predominate over any separate, individual issues only affecting members of the Class in their individual capacities.

113.    At some time during the Class Period, all of the individuals who belong to the Putative Rule 23 Class herein have been employed by Defendants as Roadside Technicians, and as such, have been unlawfully subjected to a uniform, consistent set of unfair employment practices by Defendants, as described more fully herein.

114.    The common questions of fact involved in this case include, without limitation:

(1)    Whether each member of the Putative Class has been subjected to the same company-wide policies and practices related to the manner in which they conduct their work, the methods that they use in conducting their work, the manner in which they are compensated for their work, the manner in which Defendants keep track of their

working hours, and the manner in which Defendants keep records reflecting their hours of work; and

(2)     Whether Defendants evaded their legal obligation to deduct all applicable employment taxes from the earnings of each member of the Putative Class in order to gain an unfair competitive advantage over other employers in Florida, who deduct all applicable employment taxes from their employees' earnings as required by law.

115.   The common questions of law involved in this case include, without limitation:

(1)     Whether Class Members performed labor for Defendants as employees or as independent contractors;

(2)     Whether Defendants' uniform policies and practices related to the relationship between them and their insurance company clients and their Roadside Technicians are unlawful, unfair, and/or deceptive business practices that violate FDUTPA; and

(3)     Whether Plaintiffs and all other persons similarly situated are entitled to general and/or special damages as a result of any of FDUTPA violations complained of herein, and if so, the nature of such damages.

116.   The claims of the Named Plaintiffs in this case are typical of those of the Class Members which they seek to represent, in that Named Plaintiffs and each member of the Class have sustained damages, and are facing irreparable harm

because of, and arising out of, a common course of conduct engaged in by Defendants, as complained of herein.

117.    The claims of Plaintiffs coincide with, and are not antagonistic to, the claims of other Class Members whom the Plaintiffs seek to represent.

118.    Plaintiffs will fairly and adequately represent and protect the interests of the members of the Putative Class whom they seek to represent. Plaintiffs do not have any interests that are adverse to the interests of the members of the Putative Class described herein.

119.    Counsel for Plaintiffs are experienced, qualified, and generally able to conduct complex class action legislation.

120.    The relief sought in this action is necessary to restore to members of the Putative Class the money and property which Defendants have illegally acquired through the unlawful treatment of each Class Member as described herein.

121.    Plaintiffs intend to send notice to all members of the Putative Class to the extent required by Federal Rule of Civil Procedure 23. The names and addresses of the Putative Class members are readily available from Defendants' records.

## COUNT I – FLSA OVERTIME VIOLATION

122.    Plaintiffs reallege and readopt the allegations of paragraphs 1-5, 8-53, and 63-93 of this Complaint, as though fully set forth herein.

123.    During the statutory period, Plaintiffs worked overtime hours while employed by Defendants, and they were not compensated for all of these hours in accordance with the FLSA.

124.    The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

125.    As a result of the foregoing, Plaintiffs have suffered damages.

**WHEREFORE**, for Count I, Plaintiffs demands:

a)  Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiffs and their counsel to represent the Collective Action members;

b)  Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

c)  Judgment against Defendants for an amount equal to Plaintiffs' unpaid back wages at the applicable overtime rate;

d)  Judgment against Defendants, stating that Defendants' violations of the FLSA were willful;

e)  An amount equal to Plaintiffs' overtime damages as liquidated damages;

f)  To the extent liquidated damages are not awarded, an award of prejudgment interest;

g)  A declaratory judgment that Defendants' practices as to Plaintiffs were unlawful, and a grant of equitable relief to Plaintiffs;

h)  All costs and attorney's fees incurred in prosecuting these claims; and

i)  For such further relief as this Court deems just and equitable.

## COUNT II – FLSA MINIMUM WAGE VIOLATION

126.  Plaintiffs reallege and readopt the allegations of paragraphs 1-5, 8-53, and 63-93 of this Complaint, as though fully set forth herein.

127.  During the statutory period, Plaintiffs and Class Members worked for Defendants, and they were not paid the applicable statutory minimum wage for the hours that they worked, as mandated by the FLSA.

128.  By way of example and not limitation, Plaintiffs were paid for only some of the service calls they attended and performed work for on behalf of Defendant.

129.  Plaintiffs were not paid to wait for the dispatch calls from Defendant even though they were prohibited by Defendant from performing work for any other entity and were thus engaged to wait.

130.   Plaintiffs were required to work shifts from forty hours to seventy hours per week.

131.   Defendants deducted monies from Plaintiffs paychecks regularly without justification or explanation.

132.   The foregoing conduct, as alleged, constitutes a willful violation of the FLSA, within the meaning of 29 U.S.C. § 255(a).

133.   As a result of the foregoing, Plaintiff and the Class Members have suffered damages.

## COUNT III – FLORIDA MINIMUM WAGE ACT VIOLATION

134.   Plaintiffs reallege and readopt the allegations of Paragraphs 1-4, 6, 8-44, 63-90, and 94-103 of this Complaint, as though fully set forth herein.

135.   Plaintiffs have exhausted all of their and the Class Members administrative and pre-suit requirements under Fla. Stat. § 448.110. Specifically, Plaintiffs have notified Defendants of the deficiency in their wages in writing. In this written notice, Plaintiffs identified the applicable State minimum wage at issue, provided actual dates and hours or accurate estimates of all of the periods of employment for which minimum wage payment is sought, and listed the total amount of their alleged unpaid wages through the date of the notice.

136.   During the statutory period, Defendants did not pay Plaintiffs and the Class Members the applicable Florida statutory minimum wage, as Defendants were required to do under Section 24, Article X of the Florida Constitution and the FMWA.

137.   As a result of the foregoing, Plaintiffs have suffered damages.

**WHEREFORE**, for Counts II and III, Plaintiff demands:

a.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the members of the Class and appointing Plaintiff and his counsel to represent the Class;

b.   Designation of this action as a collective action on behalf of the Collective Action Members and prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA Opt-In Class, appraising them of the pendency of this action, permitting them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. §216(b) and appointing Plaintiff and his counsel to represent the Collective Action members;

c.   Declaring, pursuant to 29 U.S.C. §§2201 and 2202, that the acts and practices complained of herein are in violation of the maximum hour and minimum wage provisions of the FLSA;

d.   All unpaid wages at the FLSA mandated minimum wage rate;

e.   All unpaid wage at the Florida mandated minimum wage rate;

f.   An equal amount of all owed wages and misappropriated funds as liquidated damages as allowed under the FLSA;

g.   An equal amount of all owed wages as liquidated damages as allowed under Article X, Section 24 of the Florida Constitution;

h.  Reasonable attorney's fees, costs and expenses of this action as provided by the FLSA; and

i.  Such other relief to which Plaintiffs and Class Members may be entitled, at law or in equity.

## COUNT IV – VIOLATIONS OF FDUTPA BY RULE 23 CLASS

138.   This claim is brought by Plaintiff on behalf of all similarly-situated Roadside Technicians.

139.   Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1-4, 7, 8-44, 54-90, and 104-121 of this Complaint.

140.   This is an action for damages plus attorney's fees and court costs under FDUTPA.

141.   Plaintiffs and all other similarly situated FDUTPA Class Members are "persons" within the meaning of FDUTPA, Fla. Stat. § 511.211(2).

142.   Defendants are engaged in "trade or commerce" within the meaning of FDUTPA, and Plaintiffs and the FDUPTA putative class members are "consumers" as defined by FDUPTA.

143.   In violation of FDUTPA, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of their trade and commerce, and has thereby deprived Named Plaintiffs, and all other persons similarly situated, of fundamental rights and privileges guaranteed to all employees under Florida law.

30

144.    In an effort to avoid providing their Roadside Technicians with the minimum benefits and protections afforded employees under Florida law, Defendants have willfully, uniformly, and unilaterally classified each and every one of its Roadside Technicians as independent contractors rather than employees, despite the fact that the factual circumstances of the relationship between Defendants and their Roadside Technicians clearly demonstrate that they are in fact employees of the company.

145.    The actions of Defendants, in misclassifying Plaintiffs and all members of the FDUTPA Putative Class as independent contractors, are unfair and deceptive trade practices prohibited under Florida law.

146.    By and through Defendants' unfair, unlawful, and/or deceptive business practices as described herein, Plaintiffs and all other Class Members have suffered injuries in fact in that Defendants have obtained valuable property, money and/or services from Plaintiffs and all other FDUTPA Class Members, and have deprived Plaintiffs and all other FDUTPA Class Members of valuable rights and benefits guaranteed to them by law.

147.    All of the acts described herein are unlawful and in violation of public policy; and in addition are immoral, unethical, oppressive, fraudulent, and/or unscrupulous, and thereby constitute unfair, unlawful and/or deceptive business practices in violation of FDUTPA.

148.    Plaintiffs and all persons similarly situated are entitled to and do seek such relief as may be necessary to restore to them the money and property which

Defendants have acquired, or of which Plaintiffs, and all others similarly situated, have been deprived, by means of the above-described unfair, unlawful and/or deceptive business practices.

149.    Plaintiffs and all persons similarly situated are further entitled to, and hereby seek a declaration, that the business practices described above are unfair, unlawful and/or deceptive, and seek further injunctive relief to restrain Defendants from engaging in any of the above-described unfair, unlawful and/or deceptive business practices in the future.

150.    As a result of the unfair, unlawful and/or deceptive business practices described herein, Plaintiffs, and all persons similarly situated, have suffered and will continue to suffer irreparable harm unless Defendants are restrained from continuing to engage in these unfair, unlawful and/or deceptive business practices.

***WHEREFORE***, as to Count IV, Plaintiffs and all similarly situated employees who join this class action demand, with respect to their class FDUTPA claims, the following:

a.  Judgment against Defendants and a determination by this Court that Defendants violated the FDUTPA;

b.  Actual damages suffered by Named Plaintiffs and members of the Class as a result of Defendants' FDUTPA practices;

c.  All costs and attorney's fees incurred in prosecuting these claims; and

d.  For such further relief as this Court deems just and equitable.

## COUNT V: CONVERSION

**(As to Named Plaintiffs Only and Against Rainbow Services Only)**

151.    Named Plaintiffs re-allege and incorporate by reference, as though fully set forth herein, paragraphs 1-4, 8-44, and 63-90 of this Complaint.

152.    Defendants charge Plaintiffs for multiple fees for which no explanation of the fees is given. Defendants have withheld monies from each of the Named Plaintiffs.

153.    Pursuant to its unconscionable independent contractor agreement, Defendant Rainbow Services has withheld these monies without providing Plaintiff a mechanism to challenge such deductions.

154.    Thus Defendant has wrongfully appropriated monies owed to Named Plaintiffs and its intentional failure to return the monies constitutes conversion under Florida common law.

155.    As a result of Defendant's conversion, Named Plaintiffs were deprived of the possession, use, and enjoyment of their property, in the form improper deductions from each Named Plaintiff's pay.

**WHEREFORE** as to Count V, Plaintiffs demand, with respect to their conversion claims, the following:

a. A jury trial on all issues so triable;

b. That process issue, and that this Court take jurisdiction over the case;

c. Actual damages suffered by Plaintiffs as a result of Defendant's conversion;

d. All costs and attorney's fees incurred in prosecuting these claims; and

e.  For such further relief as this Court deems just and equitable.

## JURY TRIAL DEMAND

Plaintiffs demand trial by jury as to all issues so triable.

Dated this 26th day of August, 2022

Respectfully submitted,

*s/ Amanda E. Heystek*
**AMANDA E. HEYSTEK**
Florida Bar Number: 0285020
Direct Dial: 813-379-2560
**DANIEL E. KALTER**
Florida Bar No.: 1025094
Direct Dial: 813-438-8821
**WENZEL FENTON CABASSA, P.A.**
1110 N. Florida Avenue, Suite 300
Tampa, Florida 33602
Main Number: 813-224-0431
Facsimile: 813-229-8712
Email: aheystek@wfclaw.com
Email: rcooke@wfclaw.com
**Attorney for Plaintiff**